<b>-IN THE UNITED STATES DISTRICT COURT<br>FOR THE WESTERN DISTRICT OF TENNESSEE</b>

DREXEL CHEMICAL COMPANY,

    Plaintiff,

v.

GOWAN COMPANY, LLC,

    Defendant.

Case No. 2:22-cv-2438-TLP

<b><u>DEFENDANT GOWAN COMPANY, LLC'S MEMORANDUM IN SUPPORT OF<br>MOTION FOR SUMMARY JUDGMENT</u></b>

COMES NOW, Defendant Gowan Company, LLC ("Gowan" or "Defendant"), by and through undersigned counsel, and in support of Defendant's Motion for Summary Judgment, states as follows:

<b><u>SUMMARY OF ARGUMENT</u></b>

This is a simple contract interpretation matter of a plain and straightforward termination provision that was entered into between two sophisticated business parties. The contract provision and language at issue is as follows:

> This Agreement shall remain in full force and effect until the fifteenth anniversary of the Effective Date. Thereafter the Agreement shall extend automatically in one year increments ***unless*** terminated by either Party with two (2) years' prior written notice with the earliest termination notification being January 1, 2021.
>
> *See Statement of Undisputed Material Facts*, ¶¶ 1, 3, 4; [Doc #1, *Complaint at* ¶ 25] [Doc. #1-1, the *Cooperation Agreement,* § 6.1] (emphasis added).

The contract lasted the required fifteen (15) years. Then, on April 29, 2021, Gowan gave Drexel written notice of its intent to terminate ("Notice of Termination") the Cooperation Agreement (the "Cooperation Agreement", "Agreement" or "Contract"). Gowan further communicated to Drexel its position that the effective date of termination would be April 29, 2023,

1

two (2) years from its written notice of termination. Rather than comply with the Notice of Termination and comply with the winding down terms of the Contract, which allows for an extended time period of two (2) years for the parties to wind down operations, on June 6, 2022, Drexel filed this litigation. The claims asserted by Drexel border on frivolous and appear to be an attempt to use litigation to promote an untenable position. Drexel's claims require a particularly strained reading of the Contract that extends the two year winding down period to three (3) years, which is in direct contradiction to the express, plain and ordinary terms of the Contract.

Under Plaintiff's interpretation, the only effective termination date that would not extend the contract an additional three (3) years would be if the notice of termination was sent on December 31 of the previous year. Therefore, hypothetically speaking, even if Defendant sent notice of termination on January 2, 2021 the contract would automatically extend the additional one year increment, then an additional two year period until December 31, 2023.

It is unreasonable for the Court to consider this hypothetical as it is such a strained reading of the simple and plain two year notice termination that exists in the termination provision. The only reasonable interpretation of § 6.1 of the Cooperation Agreement, is that that the parties intended the contract to last at a minimum of fifteen (15) years. Then after fifteen (15) years, the contract extends on a year to year basis ***"unless"*** terminated with two (2) years written notice. Plaintiff's reading of the contract completely removes the word ***"unless"*** from the Contract and the Court's interpretation of the contractual language should result in judgment in favor of Defendants and complete dismissal of Plaintiff's claims.

## FACTUAL BACKGROUND

This declaratory judgment action arises from a contract dispute between Plaintiff and Defendant related to the interpretation of a provision in the Cooperation Agreement. [*Plaintiff's*

*Complaint,* Doc. #1]. Plaintiff executed the Cooperation Agreement on July 31, 2006 and

Defendant executed it on August 4, 2006. [*Statement of Undisputed Material Facts* "SUMF" at ¶

1] [*Plaintiff's Complaint,* Doc. #1, ¶ 23] [Doc. #1-1, Cooperation Agreement]. The effective date

of the *Cooperation Agreement* was January 1, 2006. *Plaintiff's Complaint,* [SUMF at ¶ 2] [Doc.

#1, Complaint at ¶ 24] [Doc. #1-1, Cooperation Agreement, page 1].

The Cooperation Agreement set-forth Plaintiff and Defendant's exclusive agreement to

combine and operate their respective EPTC businesses. [Doc. #1-1, Cooperation Agreement at

page 2]. The Cooperation Agreement contains the following **"Term and Termination"** provision:

> This Agreement shall remain in full force and effect **until** the
> fifteenth anniversary of the Effective Date. **Thereafter** the
> Agreement shall extend automatically in one year increments *unless*
> terminated by either Party with two (2) years' prior written notice
> with the earliest termination notification being January 1, 2021.

*[SUMF at ¶ 4] [Doc. #1-1 at § 6.1]* (emphasis added).

The effective date of the Cooperation Agreement was January 1, 2006. *[SUMF at ¶ 2]*.

The fifteenth (15th) anniversary of the Effective Date of the Cooperation Agreement was January

1, 2021. *Id.* at ¶ 3.

On April 29, 2021, Defendant gave Plaintiff written Notice of Termination pursuant to §

6.1 of the Agreement. *Id.* at ¶ 5. Defendant communicated to Plaintiff its position that termination

would be effective April 29, 2023, two (2) years from its written Notice of Termination. *Id.* at ¶ 6.

However, Plaintiff disagreed with Defendant's position, and instead contends the

Agreement will terminate effective December 31, 2023 (approximately 2 years and 8 months after

the Notice of Termination). [Complaint*, Doc. #1 at* ¶ 54(g)]. Instead of agreeing to the termination

date of April 29, 2023, Plaintiff filed its Complaint[1] for declaratory judgment, repudiation of

contract, and breach of duty of good faith on July 6, 2022. *Id.* Plaintiff requests the Court declare

the following:

> a. The Agreement requires a two-year notice to terminate the Agreement's one-year automatic extension.
>
> b. After January 1, 2021, the Agreement automatically extends for a full one-year term on the anniversary date of January 1.
>
> c. After January 1, 2021, any one-year extension begins on the anniversary of the Agreement's Effective Date of January 1, 2006 and runs for a full calendar.
>
> d. Termination of the Agreement requires a full two-years prior written notice.
>
> e. Notice of termination given after the anniversary date of January 1 and during the period when the Agreement is "extend[ed] automatically in one year increments" does not and cannot, under the plain and unambiguous language of the Agreement, shorten the automatic extension for a full calendar year which begins to run on the anniversary date of January 1.
>
> f. A notice of termination given at any point within the automatically-extended Agreement for a full one-year increment, beginning from the anniversary date of January 1, will not become effective until a full two years have elapsed from the January 1 anniversary date.
>
> g. Gowan's notice of termination dated April 29, 2021, was not effective until the next anniversary date of January 1, 2022, meaning the Agreement does not terminate until December 31, 2023.
>
> *Id.* at ¶ 54(a-g).

---

[1] The majority of Plaintiff's Complaint contains irrelevant factual allegations. Paragraphs 8-22 are largely irrelevant factual background. Additionally, paragraphs 27-38 contains substantial legal arguments that are part of Defendant's strained reading of the contract language at issue and that have no bearing on the Court's review of the legal issues. All that is necessary is for the Court to review the language under Section 6.1 and give effect to all of the words contained in the provision.

Additionally, Plaintiff asserts Defendant repudiated the Cooperation Agreement by taking the position that the Agreement will terminate effective April 29, 2023, and breached its implied duty of good faith and fair dealing. *Id*. at ¶¶ 62-67.

It is Defendant's position that § 6.1 of the Cooperation Agreement allows either party to terminate the agreement any time after January 1, 2021 by giving the other party two (2) years prior written notice. There is nothing to indicate that a notice of termination could not be sent during the year, after January 1. This interpretation, as implied by Plaintiff, takes a two (2) year notice of termination and makes it a three year termination unless Defendant sent its notice on December 31, 2020 or earlier. The automatic one year extension applies ***"unless"*** it is terminated by either party with two (2) years prior written notice. Accordingly, Defendant asks this Court to declare that the Agreement will terminate on April 29, 2023, two (2) years after Defendant gave its Notice of Termination. [Doc. #19: Answer to Complaint].

Defendant contends that the language is clear and unambiguous in its favor, and Plaintiff's interpretation of the Agreement requires a strained construction and renders use of the word "unless" meaningless.[2] As a result, Defendant requests that the Court grant judgment in its favor and dismiss the Complaint in its entirety.

<u>**CHOICE OF LAW**</u>

"A federal court sitting in a diversity case must apply the conflicts of laws rules of the state in which it sits." *Blane v. Am. Inventors Corp.*, 934 F.Supp.903, 908 (M.D. Tenn. 1996) (citing

---

[2] The other key words are ***"until"***, which establishes that the Agreement remains in full force and effect ***"until"*** the 15th anniversary of the Effective Date. The Effective Date was January 1, 2006 and the 15th anniversary was January 1, 2021. The next key word of ***"Thereafter"*** which establishes a new *year to year* term and further that applies ***"unless"*** it is terminated with two years prior written notice. This would make the earliest termination notice January 1, 2021 [after the 15 year term ended] and the earliest termination January 1, 2023. Defendant's Notice of Termination of April 29, 2021 with termination effective April 23, 2023 is in complete compliance with the terms of the Contract.

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) and *Colonial Refrigerated Transp., Inc. v. Worsham*, 705 F.2d 821, 825 (6th Cir. 1983)).

Tennessee generally follows the rule of *lex loci contractus*, meaning that "a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Williams v. Irby*, No. 13-2481-STA-cgc, 2014 U.S. Dist. LEXIS 28047, at *9 (W.D. Tenn. Mar. 5, 2014). Further, where the contract contains a choice-of-law provision, Tennessee courts generally will honor the parties' choice to apply the laws of another jurisdiction. *Id.*

Here, the Cooperation Agreement includes a Tennessee choice of law provision. Accordingly, Tennessee law governs this contract dispute between the parties. [Doc. #1-1, the *Cooperation Agreement*, ¶ 15].

## DECLARATORY RELIEF

Pursuant to the Declaratory Judgment Act, the court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201. The point of the Act is to create a remedy for a preexisting right. *Emergency Medical Care Facilities v. BlueCross BlueShield of Tenn., Inc.*, 2017 WL 237650 at * 9 (W.D. Tenn. Jan. 19, 2017).

The Sixth Circuit considers the following five factors in determining whether to exercise jurisdiction under the Declaratory Judgment Act case: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase the friction between federal and state courts and improperly

encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Amsouth Bank v.* Dale, 386 F.3d 763, 785 (6th Cir. 2004) (citing *Scottsdale Ins. Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir. 2000)).

The purpose of a declaratory judgment action is to resolve a dispute, afford relief from uncertainty with respect to rights, status, and other legal relations. *Snow v. Pearman*, 426 S.W.2d 861, 863; Tenn. Code Ann. § 29-14-103 (2000).

Here, it is undisputed that declaratory relief is proper as both Plaintiff and Defendant request the Court declare the interpretation of the language contained in § 6.1 of the Cooperation Agreement. Further, a declaratory judgment would settle the entire controversy and clarify the Parties' respective obligations as the only issue is the interpretation of § 6.1 of the Cooperation Agreement. While Plaintiff maintains additional repudiation and breach of implied duty claims, they are entirely dependent on Defendant's obligations under § 6.1 of the Cooperation Agreement and should be dismissed if the Court agrees with Defendant's interpretation of the contractual language at issue. Accordingly, this Court has jurisdiction to exercise declaratory relief.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show the absence of a genuine factual dispute, which can be accomplished by presenting evidence to that effect or by presenting evidence that negates an element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party satisfies this initial burden, the non-moving party must then "set forth specific facts showing there is a genuine issue for trial." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to survive summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

**ARGUMENT**

I.      **The Court should declare the language contained in the Cooperation Agreement allows Defendant to terminate the Contract on April 29, 2023.**

     A.      **The language contained in § 6.1 of the Cooperation Agreement is unambiguous in Defendant's favor.**

Under Tennessee law, written contract interpretation is a question of law. *Ray Bell Constr. Co. v. Tenn.*, 356 S.W.3d 384, 386 (Tenn. 2011). As with any contract, the review begins with the text of the contract. *Gehrisch v. Chubb Group of Ins. Companies*, 645 Fed. Apx. 488, 491 (6th Cir. 2016). The Court's first step in determining the interpretation of a contract is to decide whether the contractual language is unambiguous. *Id.* at 387; s*ee also Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 890 (Tenn. 2002). To determine whether the contract language is unambiguous Courts consider the contract as whole and the literal meaning of the language to determine intent of the parties. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 282 (6th Cir. 2018); *Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc.*, 368 F.3d 894, 897–98 (6th Cir. 2004).

The courts should accord contractual terms their natural and ordinary meaning, see *Evco Corp. v. Ross*, 528 S.W.2d 20, 23 (Tenn. 1975), and should construe them in the context of the entire contract. See *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996); *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992). The courts may not make a new contract for parties who have spoken for themselves, see *Petty v. Sloan*, 640, 277 S.W.2d 355, 359 (1955), and may not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise. See *Atkins v. Kirkpatrick*, 823 S.W.2d 547, 553 (Tenn. Ct. App.1991).

"A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. ***A strained construction may not be placed on the language used to find ambiguity where none exists***." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975) (e*mphasis added*).   A contract is not rendered ambiguous simply because the parties disagree as to the interpretation of or more of its provisions.  See *Warren v. Metropolitan Gov't of Nashville and Davidson County*, 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997).

Here, the Parties disagree on the interpretation of the following Term and Termination provision:

> This Agreement shall remain in full force and effect until the fifteenth anniversary of the Effective Date. Thereafter the Agreement shall extend automatically in one year increments ***unless*** terminated by either Party with two (2) years' prior written notice with the earliest termination notification being January 1, 2021.

*[SUMF at ¶ 4] [Doc #1, Complaint at ¶ 25] [Doc. #1-1, the Cooperation Agreement,
§ 6.1].*

Defendant asserts that the provision plainly and unambiguously states that the Agreement remains in full force and effect until January 1, 2021 (the fifteenth anniversary of the Effective Date of January 6, 2021).  ***Thereafter***, the Agreement would extend in one year increments (i.e., from January 1, 2021 – December 31, 2021) "***unless***" it is terminated by either party.  The only requirement is that the terminating party (whether it was Plaintiff or Defendant) gives ***two (2) years*** written notice.

**At that point, the Agreement would terminate *two years after* the notice is given. Lastly, the earliest termination notification was January 1, 2021 (which is also the fifteenth anniversary of the Effective Date].  There is simply no language in this provision prohibiting termination after January 1, 2021.  Accordingly, because Defendant gave written notice of termination to Plaintiff on April 29, 2021, termination is effective April 29, 2023.**

Conversely, Plaintiff makes convoluted and nonsensical arguments that the effective date of termination should be December 31, 2023 because the contract automatically extended for a period of one-year on January 1, 2021, prior to Defendant's written Notice of Termination. Therefore, Defendant was prevented from sending a notice of termination until December 31, 2021 making the effective date of termination December 31, 2023.

Plaintiff's interpretation completely ignores the word "***unless***" and is a strained construction of the provision. The language in § 6.1 of the *Cooperation Agreement* unambiguously permits either party to terminate the contract with two years prior written notice regardless of the automatic extension period. ***"Unless"*** is the key word establishing that the contract only extends in one year increments if it is not terminated. Once terminated (after January 1, 2021), it ends two years after the Notice of Termination is sent. The plain meaning of ***"unless"*** is "*except on the condition that*". *See* Merriam-Webster dictionary. The ***"unless"*** provision ends the to the one year extension increments and provides for a two-year winding down period. There is simply no other reasonable interpretation of the contract language at issue.

**B.      It was the intent of the Parties to allow either party to terminate the contract with two (2) years' prior written notice.**

Under Tennessee law, when the contact language is unambiguous, the court must determine the mutual intent of the parties. *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). "The written words [are] the lodestar of contract interpretation." *Id*. at 694. Specifically, courts must construe the language as written and based on its plain terms. *Cummings v. Vaughn*, 911 S.W.2d 739, 742 (Tenn. Ct. App. 1995). "Tennessee courts 'give primacy to the contract terms, because the words are the most reliable indicator—and the best evidence—of the parties' agreement….'" *Individual Healthcare Specialists, Inc.*, 566 S.W.3d.   Courts have found similar "evergreen termination clauses" to be

clear and unambiguous providing terms that expressly declare when the contract may be terminated. *See Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.*, 163 F.3d 965, 969 (6th Cir. 1998). If the Parties l intended to disallow mid-year notices of termination, they would have included the same in the termination provision.

Here, the intent of the parties is clear based on the plain language of § 6.1 of the Cooperation Agreement, which allows either party to terminate the agreement, after January 1, 2021, with two (2) years' prior written notice. Specifically, the plain language permits termination two (2) years after written notice is given, rather than two years ***plus*** the remainder of the termination year, which would be the consequence of Plaintiff's interpretation and exclusion of the word "unless." By Plaintiff ignoring the word "***unless***," the contract could only ever terminate on December 31 in the year of termination. Meaning, unless notice of termination was given on December 31, neither party could ever terminate the agreement two (2) years after giving written notice because they would have to wait until December 31 of the termination year for the termination to become effective. Such an interpretation is not only directly contrary to the parties' inclusion of the two-year prior written notice language, but is also not provided for by any other provision in the contract.

Moreover, the fact that the termination provision was terminable by "***either party***" by providing two (2) years notice, establishes clear "***mutual intent***" of the parties. Therefore, Defendants request the Court declare, as matter of law, the Cooperation Agreement permits Defendant to terminate the Contract on April 29, 2023, or two (2) years after it provided Plaintiff written Notice of Termination.

### C. Plaintiff's Interpretation is Particularly Strained and Unreasonable.

A contract is ambiguous only if its meaning is uncertain and is susceptible to more than

one reasonable interpretation. See *Bonastia v. Berman Bros.*, 914 F.Supp. 1533, 1537 (W.D. Tenn. 1995); *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App.1995). Plaintiff's interpretation requires the Court to insert words that are not included in the Contraction provision. Under Plaintiff's interpretation, the only effective termination date that would not extend the contract an additional three (3) years would be if the terminate notice was sent on December 31 of the previous year. Therefore, hypothetically speaking, even if Defendant sent notice of termination on January 2, 2021 the contract would automatically extend the additional one year increment, then an additional two year period until December 31, 2023. The words that would make this interpretation correct simply do not appear in the Termination Provision or in any other provisions of the Agreement..

This hypothetical is such a strained reading of the plain and simple two year termination notice provision that it is unreasonable for the Court to consider. Conversely, as asserted by Defendant, a reasonable interpretation of the Parties intent is that the contract has a minimum term of fifteen (15) years. Then ("***Thereafter***"), after fifteen (15) years, the contract extends on a year to year basis ***"unless"*** terminated with two (2) years written notice.

Plaintiff's interpretation is that the "Agreement does not include any provision allowing for termination to occur at any point in the middle of a year after the Agreement has automatically extended for a one-year incremental period." *See* Complaint at pp. 2. This is simply false. There is nothing in the contractual language discussing when the termination notice must be sent during the year. The language is clear that the earliest termination notice is January 1, 2021. At that point, it may extend in one year increments ***"unless"*** terminated by either party with two (2) years prior written notice. The Notice of Termination sent by Defendant on April 29, 2021 gave the proper notice allowing for termination to on April 29, 2023.

**D.** **Alternatively[3], even if the Termination Provision was found to be Ambiguous, a two-year termination notice is sufficiently reasonable to favor Defendant's Interpretation and was the agreed upon term between the parties.**

If the Court were to determine that the Contract provision is ambiguous, the court must apply established rules of construction to determine the intent of the parties. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W. 3d 885, 890 (Tenn. Ct. App. 1993). When a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. See *Memphis Housing Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001).

Other courts that have considered the purpose of termination provisions are clear that generally, the purpose is to give the non-terminating party sufficient notice of the impending termination. See *Verdi Const. Inc. v. Central Ohio Improvement Corp.*, 2008 WL 4877779 at *7 (S.D. Ohio Nov. 12, 2008); *Smoot v. Mobil Oil Corp.,* 722 F. Supp. 849 (D. Mass. 1989)(purpose of notice of termination requirement is to give sufficient advance notice of termination so that the non-terminating party can make appropriate arrangements). "Express provisions for termination govern a contract and courts cannot create a contractual liability where the express intent of the parties was to terminate the agreement upon a given condition." *E3A v. Bank of America, N.A.*, 2013 WL 1499560, at *2 (E.D. Mich. Apr. 11, 2013). Two years is certainly a significant notice period to allow the parties time to wind down the contractual relationship.

Here, it was clear that the parties intended the termination provision to be an "'evergreen agreement' unless terminated per section 7.2" [later changed to section 6.1]. **Exhibit 1**: Email chain dated 2/1/05. As a general concept, an evergreen clause provides that the terms of an

---

[3] It is unnecessary for the Court to consider outside evidence as Defendant believes the language is unambiguous. Furthermore, Plaintiff's also claim the language is "unambiguous". See Complaint, Doc. #1 at ¶¶ 54(e), 59, 60.

agreement will automatically renew for some period of time unless one party provides the other party with the agreed upon notice that it does not wish to renew the agreement. See Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp., 258 F.3d 645 (7th Cir. 2001)("Although the contract expired in 1993, it contained an "evergreen" clause: *If* neither party terminated the contract, it would be renewed automatically)(emphasis added). As a threshold matter, evergreen clauses are legally valid. See, e.g., *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 2140, 141 L.Ed.2d 451 (1998) (discussing evergreen clause as legitimate contractual provision); *International Union of Operating Engineers, Local 369 v. Office & Professional Employees Union, Local 367*, 66 F.3d 325, 1995 WL 538537 (6th Cir.1995) (describing valid evergreen clause in collective bargaining agreement); *Barrick Gold Exploration, Inc. v. Hudson*, 823 F.Supp. 1395, 1405 (S.D. Ohio 1993) (discussing valid evergreen clause in trust agreement); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Grp., Inc.*, 660 F. Supp. 2d 900, 917 (N.D. Ill. 2009) ("A contract containing an evergreen clause binds an employer to subsequent CBAs *until* the contract is properly terminated."); *RMD, LLC v. Nitto Americas, Inc.*, 2012 WL 1033542, *10 (D. Kan. March 27, 2012)(stating standard "evergreen" provision allows contract to automatically renew for another term, typically a year, without further action *until* terminated by one of the parties with notice given prior to termination)(emphasis added).

Such evergreen provisions are common in contracts. For example, the evergreen renewal clause in *Trustees of B.A.C. Local 32 Ins. Fund*, contained the following provision:

> It is agreed by both parties that this Agreement shall remain in full force and effect through May 27, 1992 and from year to year thereafter unless written notice of intent to terminate or modify the Agreement be submitted, at least sixty (60) days prior to the expiration date by either party to the other.

> 163 F.3d at 969.

What is consistent in these clauses is that courts do not state that a contract automatically extends after the notice of termination is given. The notice of termination is final and applies according to whatever time periods the parties set. In this case, the termination notice was allowed any time after January 1, 2021 and expires two (2) years to the day after the notice was given. The language is simple, clear and unambiguous.

## II. Plaintiff's Repudiation or Anticipatory Breach of Contract should be dismissed as a matter of law as Defendant's actions are allowable by the terms of the Cooperation Agreement.

There can be no repudiation or anticipatory breach of contract claim once the Court declares that the termination provision favors Defendant's interpretation. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the pleading. Notes of Advisory Committee on Rules -1937, Fed. R. Civ. P. 57. Under Tennessee law, anticipatory breach of a contract occurs when a party to a contract takes certain actions or makes statements to repudiate it. *UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007). "Such a repudiation can occur when a party 'commit[s] a voluntary act which renders the party unable or apparently unable to perform the contract,' or when 'the words and conduct of the contracting party…amount to a total and unqualified refusal to perform the contract.'" *Id*. (quoting *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn.Ct.App.1991)). However, a party's action do not rise to the level of repudiation if the party performs actions allowable under the terms of the contract. *Am. Senior Dev., L.L.C. v. Parkside of Collierville, L.L.C.*, 102 F. App'x 890, 896 (6th Cir. 2004). Here, upon a determination that the termination provision allows for a termination effective April 29, 2023, Defendant will have performed actions allowable under the terms of the contract, requiring dismissal of the repudiation claim.

Plaintiff alleges Defendant repudiated the Cooperation Agreement by its belief "its termination notice dated April 29, 2021 is effective April 29, 2023." [*Complaint,* Doc. #1 at ¶ 63]. However, Defendant's belief regarding the effective date of termination is based on the language of § 6.1 of the Cooperation Agreement, which allows ***either party*** to terminate the agreement with two-year prior written notice. Therefore, Plaintiff's claim fails as a matter of law because Defendant's actions are allowable under the terms of the contract and do not constitute repudiation or anticipatory breach of the contract.

### III. Plaintiff's Breach of Implied Duty of Good Faith and Fair Dealing claim fails as a matter of law because Plaintiff has failed to set-forth sufficient evidence to prove a breach occurred.

Similarly, once the Court determines the Cooperation Agreement is terminated effective April 29, 2023, there can be no breach of the implied duty of good faith and fair dealing claim. "[A] claim based on the implied covenant of good faith and fair dealing is not a stand alone claim; rather, it is part of an overall breach of contract claim." *Jones v. LeMoyne–Owen College*, 308 S.W.3d 894, 907 (Tenn. Ct. App. 2009) (citing *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)). Here, there can be no breach of good faith and fair dealing claim once the Court determines the contract provision favors Defendant. In fact, it is Plaintiff's actions in pursuing a frivolous and impossible reading of the termination provision that is a breach of the implied duty of good faith and fair dealing.

"Tennessee law imposes a duty of good faith and fair dealing in the performance of every contract." *Hometown Folks, LLC v. S & B Wilson, Inc.*, 643 F.3d 520, 527 (6th Cir. 2011). "Because the nature of the duty of good faith and fair dealing depends on the contract at issue, 'courts look to the language of the instrument and to the intention of the parties, and impose a construction

which is fair and reasonable.'" *Id*. (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)).

Here, Plaintiff broadly alleges Defendant breached its implied duty of good faith and fair dealing. Because Defendant's interpretation of the contract provision at issue is correct, there can be no breach of the implied duty of good faith and fair dealing. Additionally, Plaintiff fails to allege specific facts or set-forth sufficient evidence to prove Defendant's breach. Rather, Plaintiff makes hypothetical assumptions of future damage caused by Defendant's unspecified breach that relies on a ruling by this Court that Plaintiff's interpretation of the termination provision of the Contract is correct. Accordingly, Plaintiff's claim should be dismissed as a matter of law because it has failed to set-forth sufficient evidence to prove breach of implied duty of good faith and fair dealing.

## **CONCLUSION**

For the reasons stated above, Defendant respectfully requests the Court grant declaratory relief in favor of Defendant and declare that the Cooperation Agreement is terminated as of April 23, 2023, and dismiss all of Plaintiff's causes of action as a matter of law.

DATED: March 15, 2023

Respectfully Submitted,

*/s/ Joshua D. Wilson*
Joshua D. Wilson (TN Bar # 031486)
Kennedy Kelly (TN Bar # 037570)
GORDON REES SCULLY MANSUKHANI
4031 Aspen Grove Drive, Suite 290
Franklin, Tennessee 37067
Tel: (615) 772-9007
Fax (615) 970-7490
jdwilson@grsm.com
kekelly@grsm.com
*Counsel for Defendant*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on March 15, 2023, a true and correct copy of the foregoing document was filed and served electronically on all counsel of record, whom are indicated below, via CM/ECF:

Michael F. Rafferty (TN Bar # 10092)
Louis Bernsen (TN Bar # 39480)
HARRIS SHELTON HANOVER & WALSH, PLLC
6060 Primacy Parkway, Suite 100
Memphis, Tennessee 38119
mrafferty@harrisshelton.com
Tel: (901) 525-1455

*Counsel for Plaintiff*

*/s/ Nicole Canter*
Nicole Canter, Assistant to Joshua D. Wilson